IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELA M. M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-711-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff protectively applied for SSI benefits on August 31, 2017 (Tr. 15-16, 153-54). She appeared for an evidentiary hearing with ALJ Jason Panek on June 27, 2019 (Tr. 32). ALJ Panek denied Plaintiff's application on September 18, 2019 (Tr. 24). The Appeals Council denied Plaintiff's request for review (Tr. 1). Plaintiff filed a timely Complaint in this Court on July 20, 2020 (Doc. 1).

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 10).

**Issue Raised by Plaintiff**

Plaintiff raises only one issue for the Court to consider: whether the ALJ improperly assessed Plaintiff's credibility.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?  20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.  A negative answer at any step other than step 3 precludes a finding of disability.  The plaintiff bears the burden of proof at steps 1–4.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, this Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Panek followed the five-step analytical framework described above. He determined that Plaintiff had not engaged in substantial gainful activity since August 30, 2017 (Tr. 18). He found that Plaintiff has the following severe impairments: osteoarthritis of the left knee and bilateral shoulders and obesity (Tr. 18). However, he found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" *(Id.)*.

ALJ Panek found that Plaintiff has the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 416.967(b) except that cannot climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs. occasionally climb ramps and stairs. [She] can occasionally stoop, kneel, crouch, and crawl. She can occasionally perform overhead reaching with her right upper extremity.

(Tr. 19).

ALJ Panek stated in his opinion that "the vocational expert testified that a hypothetical person of the claimant's age, education, and the residual functional capacity…would be unable to perform the claimant's past relevant work" (Tr. 23). Perhaps due to a transcription error, however, the transcript of the hearing reflects that the vocational expert testified Plaintiff *would* be able to perform the required functions of her past work (Tr. 48).[4]

ALJ Panek further found that Plaintiff was closely approaching advanced age, had a limited education, and can communicate in English (Tr. 23). Finally, he determined that "considering [Plaintiff's] age, education, work experiences, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" (*Id.*). Therefore, Plaintiff was not disabled (Tr. 24).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments.

1. **Agency forms**

In Plaintiff's initial disability report, she reported that she stopped working on December

---

[4] This error does not affect the outcome or this Court's analysis. *See* 20 C.F.R. §404.1520(a)(4)(iv). Had ALJ Panek found that Plaintiff could perform past relevant work, he simply would have ended his analysis there and determined she was not disabled,  instead of also considering whether there are a significant number of jobs in the national economy that she could perform.  20 C.F.R. § 404.1520.  Regardless, ALJ reached the same conclusion: that Plaintiff was not disabled. The issue for this Court to determine is whether the ALJ improperly assessed Plaintiff's credibility and therefore crafted an improper RFC-an analysis that takes place before he determines whether she can perform past relevant work. 20 C.F.R. §404.1520(e).

31, 2016 because "my knees were hurting and the job that I had at the time ended" (Tr. 179). However, she believes that on December 31, 2014 her conditions became so severe that she should have stopped working (*Id.*) In her job history, she listed a job title of "styling hair" in which she was self-employed from 2009-2014 (Tr. 180). She did not list a position for the period of 2014-2016 (Tr. 180, 195).

In a function report dated April 16, 2018, Plaintiff explained that "if I write for a long period of time my shoulders hurt me being right handed…arthritis in my knees hurts often" (Tr. 227). She can lift "about 10 pounds" (Tr. 232).

### 2. Evidentiary Hearing

Plaintiff was 53 years old on June 27, 2019-the date of the hearing (Tr. 35). She previously worked as an unlicensed hairstylist (Tr. 37). She stopped because she was "having problems with [her] shoulders" (Tr. 39).

She testified that the arthritis in her knees "is getting so intense where sometimes…my husband has to help me out of the bed" (Tr. 40). Her physician, Dr. Granger, ordered her a cane. However, using the cane exacerbated the pain in her shoulders so she asked him for a walker (*Id.*). She can only stand or walk for 30 minutes (Tr. 41). She testified that the pain in her right knee was worse than the left (*Id.*). She takes a Vicodin pill twice a day for the pain (Tr. 42).

She received injections for the pain in her shoulders, but relief from the injections only lasted 3-4 days (Tr. 44). She testified that 3-4 times a week, the pain is so bad she cannot reach her right hand over her head. (*Id.*). Dr. Granger referred Plaintiff to physical therapy. She testified that she did not participate in the therapy because her insurance did not cover it (Tr. 44).

When asked whether the Vicodin relieved her shoulder pain, she responded, "[w]ell yeah,

sometimes, it's just the same way with the arthritis in my knees, sometimes it helps and sometimes it doesn't" (*Id.*)

ALJ Panek asked vocational expert Zachary Langley to consider the following hypothetical:

> ….an individual that's closely approaching advanced age, has a limited education and the past work [of hairstylist, exertion level light]. Further consider the individual would be limited to a range of light work involving no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs, kneeling, crouching, crawling, or stooping. The individual could do no more than occasionally reach overhead with the right upper extremity…Given those restrictions would the individual be able to perform the required functions of [Plaintiff's] past work?

The vocational expert responded "[y]es, your honor" (Tr. 48).   He also testified that Plaintiff could perform the following "light" positions: furniture rental consultant, investigator dealer accounts, mail clerk (Tr. 49).

3.     **Relevant Medical Records**

Dr. Miguel Granger started seeing Plaintiff as early as January 2015 for "osteoporosis, unspecified" (Tr. 529).   He prescribed Norco to be taken twice daily (*Id.*).[5] Plaintiff underwent bilateral shoulder x-rays on July 23, 2015 (Tr. 535). The radiologist noted bilateral acromioclavicular osteoarthritis (*Id.*).[6] She also underwent bilateral knee x-rays; the radiologist noted that she had early osteoarthritis in the left knee (Tr. 537).

Plaintiff saw Dr. Granger on July 20, 2015 for "body pain, hypertension, headaches, routine

---

[5] Norco is a combination of hydrocodone and acetaminophen "used to relief pain severe enough to require opiod treatment." https://www.mayoclinic.org/drugs-supplements/hydrocodone-and-acetaminophen-oral-route/description/drg-20074089 (last visited March 22, 2022).
[6] The acromioclavicular joint is where the collarbone and shoulder blade meet. Hopkinsmedicine.org./health/ conditions-and-disease/ac-joint problems (last visited 3/18/2022).

check-up" (Tr. 525). His assessment/plan again included the diagnosis of "osteoarthritis, unspecified" and he renewed Plaintiff's Norco prescription (Tr. 525). Plaintiff returned to Dr. Granger on September 21, 2015, and he renewed the Norco prescription (Tr. 522). She returned to see him for "follow up, medication refills" in December 2015, April 2016, July 2016, October 2016, January 2017 (Tr. 435, 438, 440, 443, 521). He continued prescribing Norco for "unspecified ostoearthrtis" (Tr. 437, 438, 440, 442, 521). In April 2017, Plaintiff returned to Dr. Granger for "right shoulder pain, medication refills, bad cough, routine check-up" (Tr. 386-87). Dr. Granger performed a physical exam and noted that she had "knee/shoulder pain with ROM" (Tr. 388). He continued prescribing Norco (Tr. 389).

In July 2017, Dr. Granger noted that Plaintiff had "pain with ROM of knees, but minimal" (Tr. 386). He did not refill her Norco prescription (*Id.*). She returned to see him in October 2017, reporting that her "knee pain was getting worse without pain medication…could not get out of bed some mornings with recent weather change (Tr. 383). Dr. Granger performed a physical exam and noted that she had knee pain "with ROM" (*Id.*). Dr. Granger ordered a cane for her (Tr. 405).

Plaintiff saw Dr. Granger again on February 22, 2018, reporting that she had "left knee/bilateral shoulder pain with ROM" (Tr. 422). He refilled her Norco prescription (Tr. 422).

Plaintiff saw Dr. Daniel Schwarze on March 22, 2018 (Tr. 472). He noted that her active range of motion in both shoulders was limited and administered a steroid injection to her *(Id)*. Plaintiff also underwent an x-ray of her right shoulder (Tr. 453). The x-ray report stated "mild AC joint degenerative changes with mildly prominent spur of the distal clavicle…[o]therwise normal alignment" (Tr. 453). Dr. Schwarze's diagnoses were 1) shoulder pain (right); 2) impingement syndrome (right shoulder); 3) impingement syndrome (left shoulder); 4) tendonitis

of right shoulder (Tr. 472).   He ordered diclofenac sodium, a non-steroidal anti-inflammatory pain medication (*Id*.).[7]

Dr. Schwarze ordered physical therapy for "impingement syndrome of right shoulder region" (Tr. 455).   Plaintiff saw the physical therapist on March 29, 2018 and rated her pain 0/10 on that date (Tr. 457).   The therapist noted "[p]atient reports she was referred to PT after a recent MD visit for shoulder pain, but she is not sure she needs it. Patient has intermittent bilateral shoulder pain" (Tr. 458).   Plaintiff reported that she could do the following activities with much difficulty on that date: pull, reach, lift, roll over (Tr. 461).   She could do the following activities with moderate difficult: push, grasp, carry, lie flat, moving from lying to sitting (*Id*.)   The physical therapist noted the following clinical presentation: "Patient [has] chronic right shoulder pain of low to moderate severity…patient will benefit from PT" (Tr. 462).   Plaintiff's therapy goals included: 1) right shoulder active range of motion within normal limits without pain for reaching; 2) right shoulder strength to 5/5 without pain (Tr. 462).   The next day, Plaintiff did not appear for her therapy appointment (Tr. 459).   She saw Dr. Granger on May 22, 2018 and he renewed her Norco prescription (Tr. 516).

Plaintiff saw Dr. Granger in August 2018 in a follow-up visit for hypertension (Tr. 506). He noted that she had "knee pain with lateral effusion for months…no injuries" and renewed her Norco prescription (Tr. 509).   Plaintiff saw Dr. Granger in December 2018 in a follow-up visit for her diabetes (Tr. 503).   He noted that she had no complaints except for left shoulder and right shoulder pain and renewed her Norco prescription (Tr. 505, 506).   Plaintiff returned to Dr. Granger on April 4, 2019 for "right shoulder pain, medication refills, knee pain, stomach issues"

---

[7] https://www.mayoclinic.org/drugs-supplements/diclofenac-oral-route/description/drg-20069748 (last accessed March 21, 2022).

(Tr. 499). He ordered a walker for her, along with x-rays of her knees (Tr. 502). The x-ray report for her knees showed "minimal early osteoarthritic changes with no acute osseous abnormality in either knee" (Tr. 533). He also renewed her Norco prescription (Tr. 502).

### 4. Medical Opinions

Plaintiff underwent a consultative exam with Dr. Nirmala Mathew on December 13, 2017 (Tr. 408). Dr. Mathew made the following notes:

> Problems with both shoulders…in the past two years she has had increasing pain, especially with range of motion…the right shoulder hurts more than the left shoulder with active range of motion. It especially hurts when she tries to put on a coat and take off the jacket. On examination, range of motion of the right as well as the left shoulder is full, but active range of motion of the right shoulder is more painful than that of the left shoulder…patient's grip strength in bilateral extremities is 5/5. There is no evidence of any muscle spasms or muscle atrophy. Sensation is intact bilaterally in the upper extremities. Motor strength in bilateral upper extremities is also 5/5.
>
> Arthritis in the knees. There is no evidence of any swelling, erythema or tenderness in both knees….left knee is more painful than the right knee….patient's gait was normal….patient walked unassisted. She was able to walk on her toes and her heels and get on and off the table without difficulty.
>
> She can stand for 10 minutes, walk one city block, sit for 2 hours, and lift up to 5 pounds. She says she is also able to grocery shop.
>
> Clinical Impressions:
>
> 1. Problem with both shoulders: Range of motion of both shoulders is full. The right shoulder is more painful than the left shoulder. X-ray of the right shoulder today was negative.
> 2. Bilateral knee pain: No evidence of any swelling, erythema, or tenderness. Range of motion of both knees is full and not painful. Gait is normal and unassisted. Left knee x-ray today was negative.

(Tr. 408-11). The physician who interpreted the x-rays of Plaintiff's shoulder noted that "the

acromioclavicular joint is normally aligned…no arthritic changes" (Tr. 414).

## Analysis

ALJ Panek was in the best position to determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "consistent with the objective medical evidence, and the other evidence of record", and the Court will only overrule his decision if it is "patently wrong." SSR 16-3p, 2017 WL 5180304, *8 (Oct. 25, 2017); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008 (internal citations omitted). The "other evidence of record" that ALJ Panek could consider includes "a longitudinal record of any treatment and its success or failure" and statements made by Plaintiff at the hearing and "directly to medical sources." *Id*. at *6.

Plaintiff first contends that ALJ Panek "failed to recognize" that Plaintiff consistently reported knee pain while her claim for SSI benefits was pending. To the contrary, ALJ Panek considered that Plaintiff reported pain (sometimes debilitating) in her knees from 2017-2019 (Tr. 20). However, he compared her complaints of pain (specifically, her claim that she could not stand for more than 30 minutes) to various imaging studies of her knees that showed minimal abnormalities, or no abnormalities (*Id*.). He also compared her complaints of pain to Dr. Mathew's findings, including Dr. Mathew's observation that Plaintiff could get on and off the exam table with no difficulty and could walk on her toes and heels (*Id*.). In sum, ALJ Panek constructed an "adequate logical bridge" between his conclusions and the evidence of Plaintiff's knee impairments. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Plaintiff further argues that ALJ Panek improperly determined Plaintiff does not need a cane. This determination was improper, Plaintiff reasons, because ALJ Panek is not qualified to make such a finding. However, ALJ Panek simply concluded that Plaintiff did not have "an

ongoing need for an assistive device while standing or walking" because Dr. Mathew observed Plaintiff walking unassisted. Dr. Mathew's observations and findings are "evidence that a reasonable mind might accept as adequate." *See id*. (internal quotations omitted).

Plaintiff then turns to her shoulder conditions, arguing that ALJ Panek failed to evaluate the signs and symptoms of shoulder impingement when determining Plaintiff's RFC.[8] Plaintiff gives no support for this argument, and instead simply quotes multiple paragraphs from a "Continuing Education Activity" regarding shoulder impingement on the National Center for Biotechnology Information website. This argument is not persuasive and the citation is not helpful. At the hearing, Plaintiff testified that 3-4 days a week she could not lift her right hand above her head. ALJ Panek included this limitation in the hypothetical ("individual could do no more than occasionally reach overhead with the right upper extremity").

Finally, Plaintiff argues that ALJ Panek failed to consider that Dr. Granger prescribed Norco to Plaintiff for approximately three years and therefore Dr. Granger "must have" believed Plaintiff suffered from moderate-severe pain. ALJ Panek *did* consider the Norco prescription, noting that despite Plaintiff's ongoing complaints of pain, and despite her visit to an orthopedist and recommendation to undergo physical therapy, her longitudinal treatment (pain medication prescribed by her primary care physician) never deviated in any significant way. (Tr. 21).

Ultimately, all of Plaintiff's arguments invite the Court to reweigh the evidence and substitute its judgment for that of the ALJ. ALJ Panek supported his decision with "evidence that a reasonable mind might accept as adequate." *See id*. Accordingly, the Court affirms the

---

[8] Plaintiff also briefly argues that ALJ Panek erred by conflating the diagnosis of osteoarthritis with shoulder impingement at Step II. Because ALJ Panek found that Plaintiff had a severe impairment at Step II and continued with his analysis, and because he ultimately considered all of her shoulder impairments, any such error made by conflating the two conditions is harmless. *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).

decision of the Commissioner.

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 22, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**